ADKINS, Justice,
dissenting.
The decision of the District Court of Appeal holding that the trial court did not commit reversible error in failing to grant additional peremptory challenges or excuse Juror Mercer for cause is in direct conflict with the decision in Singer v. State, 109 So.2d 7 (Fla.1959).
During the voir dire examination the following colloquy took place between Juror Mercer, the Court, Defense Attorney Kinney, and Assistant State Attorney Demmi:
“THE COURT: Now, you indicated that you have read something in the paper about this? By virtue of what you have read, have you formed an opinion as to the case?
“MR. MERCER: I don’t know if it is an opinion. I think I might say I might be prejudiced against the Defendant.
* * * * # *
“MR. KINNEY: When the Judge was questioning you initially, you said you had read something in the paper and you felt it prejudiced you? Is that correct?
“MR. MERCER: That is what I said.
“MR. KINNEY: Prejudiced you against the Defendant or against the State?
“MR. MENSH: I object to that question, Judge.
“THE COURT: I don’t believe he said that, Mr. Kinney. That isn’t my recollection of what he said.
“MR. KINNEY: Well, he just said it again, so let me ask him if there is any doubt. Did what you read in the paper prejudice you?
“MR. MERCER: I don’t think I took it that personally. What I said was I thought it might.
“MR. KINNEY: You thought it might. Okay, we are playing with words, then. It might prejudice you?
“MR. MERCER: Yes.
“MR. KINNEY: What was it about it that you felt it might prejudice you?
“MR. MERCER: That I can’t tell you.
“MR. KINNEY: Meaning you can’t because you won’t or you can’t because you don’t know?
“MR. MERCER: I can’t because I don’t know.
“MR. KINNEY: But you still have that feeling of prejudice? Right?
“MR. MERCER: I might, I don’t know. Reasonable to believe it.
“MR. KINNEY: That 'might prejudice’ you that you had, was that against the Defendant?
“MR. MERCER: Yes.
*456 “MR. KINNEY: Your Honor, I want to move to excuse this juror for cause. Let me tell you my reason. I have exhausted my challenges. This may (sic) says he might be prejudiced.
“THE COURT: No, he said he may have been prejudiced.
“MR. KINNEY: Quote, might, close quote was the word he used.
“MR. DEMMI: ‘Might have prejudice.’
“MR. KINNEY: And in a spirit of fairness to this Defendant, the Court may well recognize there is a danger to this jury in having a man who may be prejudiced. Excuse the man for cause.
“THE COURT: All right, sir I am going to ask Mr. Mercer a couple of more questions. Then I will rule.
“THE COURT: Mr. Mercer, what the Court is concerned with is whether or not, regardless of how you may have felt at the time you did this, what are you (sic) feelings now as to whether or not you can give this Defendant and the State of Florida a fair and impartial trial as you sit here at this moment? Do you feel you can bring a verdict based solely on the evidence presented to you in this Court and the law you will be instructed on?
“MR. MERCER: I think so.
“THE COURT: Is there any doubt in your mind?
“MR. KINNEY: May the record reflect, he shrugged his shoulders?
“THE COURT: You are going to have to answer my question, Mr. Mercer. Is there any doubt in your mind as you sit here right now you have any prejudice against this Defendant or against the State of Florida or in favor of the Defendant or in favor of the State of Florida.
“MR. MERCER: No I have no prejudice against the man or against the State, No.
“THE COURT: And you feel, as you sit here right now you can fairly and impartially try this case?
“MR. MERCER: I believe so.
“THE COURT: All right, Mr. Kinney, the motion will be denied at this time.
“MR. KINNEY: Approach the bench?
“MR. KINNEY: Your Honor, I would like to renew the Motion and I call the Court’s attention again to the fact that we have no further challenges left. The man’s answer shows some hesitancy. He shrugged his shoulders in one instance. He said T believe so,’ in another. I believe that ought to create sufficient doubt in the Court's mind, in the interest of justice, to grant my request that this juror be excused for cause.
“THE COURT: The Motion will be denied.”
In determining whether Juror Mercer was qualified, it is appropriate to examine the news articles and other publicity disseminated immediately prior to the trial. The Petition for Writ of Certiorari includes the Motion for Change of Venue, attached to which are various news articles from the Tampa Times, the Tampa Tribune, the St. Petersburg Independent, the Clearwater Sun, and the St. Petersburg Times. It also appears from the record that numerous broadcasts of television and radio publicity were available for the court to review. In other words, the court was aware of the publicity that had been disseminated with reference to the case of State v. Benefield. In determining the qualifications of Juror Mercer, it was incumbent upon the court to judge the juror’s qualifications in the light of the attendant circumstances.
In Singer v. State, supra, a widely publicized case, the voir dire examinations of several jurors were included. Several of the jurors in Singer should have been excused for cause, but this Court refused to reverse the conviction for this reason due to the failure of defense counsel to state a specific ground for the challenge. Also, the Court explained that the case was being reversed for other reasons. For example, the Court said:
“We think Mr. Stringfellow should have been excused for cause because of a reasonable doubt as to his impartiality and *457 as to his ability to render a verdict based solely on evidence given at the trial free of the influence of his preconceived opinion and prejudice against the defendant, but again because the grounds of the challenge were not specified and because we must reverse for other reasons we will not find the refusal of the trial court to excuse him for cause to be error. .
“Venireman Brownlee stated that he had an opinion as to the guilt of the defendant formed from newspaper articles, that it would require evidence to change that opinion, but if such evidence were produced he could and would change his opinion. He was challenged for cause but the specific basis for the challenge was not specified. For this reason and because we must reverse for other reasons no error will be found here.” 109 So.2d at 19.
After discussing several decisions relating to the rule to be followed in determining the competency of jurors, the Court said:
“The above quotations must be construed as being guides to the trial courts in exercising their discretionary power in determining the competency of jurors. They demonstrate that the goal to be sought is a jury composed of persons whose minds are free of any preconceived opinions of the guilt or innocence of an accused, persons who can in fact give to an accused the full benefit of the presumption of innocence, persons who can because of freedom from knowledge of the cause decide it solely on the evidence submitted and the law announced at the trial.
“These cases illustrate that if there is basis for any reasonable doubt as to any juror’s possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial he should be excused on motion of a party, or by the court on its own motion. “Too, a juror’s statement that he can and will return a verdict according to the evidence submitted and the law announced at the trial is not determinative of his competence, if it appears from other statements made by him or from other evidence that he is not possessed of a state of mind which will enable him to do so.” 109 So.2d at 23.
The offense charged, attempted bribery of a judicial officer, was an atrocious one. The pretrial publicity included references to court records disclosing that the judicial officer, while a defense attorney, represented Benefield in 1961 for allegedly soliciting a bribe for a pending liquor license. Bene-field was convicted of a reduced charge of attempted grand larceny, but the conviction was overturned by this Court on the ground there had been an illegal search and seizure in the case. He was not retried.
Regardless of the nature of the charge, Benefield was entitled to a trial by a fair and impartial jury. The fact that a juror was aware of the details of defendant’s previous conviction of a former offense would tend to corrupt the entire proceeding, for no juror should be expected to disregard this information during his deliberation. The improper admission of evidence of such prior conviction would be fundamental error, that is, the prejudicial effect of such evidence could not be erased from the minds of the jurors by instruction from the court. By the same token, such knowledge obtained from the news media invades the mind of the juror to such an extent that his judgment is infected with a cancerous germ of prejudice.
In considering the entire examination of Juror Mercer, it does not appear that his mind was free of a preconceived opinion. The decision of the District Court of Appeal in affirming the ruling of the trial court was in conflict with the principles enunciated in Singer v. State, supra, in determining the competency of Juror Mercer.
We have jurisdiction. We should, therefore, examine the complete record and determine whether the defendant received a trial by a fair and impartial jury as guaran *458 teed him by both the federal and state constitutions.